## SWIFT & CO. v. BULLARD & SON.

(District Court, N. D. Georgia. February 14, 1925.)

**1. Contracts ⬥93(4)—Parties are bound by written contract, regardless of differences in their understanding of its terms.**

Parties are bound by written contract, regardless of differences in their understanding of its terms.

**2. Bankruptcy ⬥426(2)—Agent for sale of fertilizer, accountable for proceeds, is not acting in fiduciary relation, under Bankruptcy Act.**

Agent for sale of fertilizer, accountable for proceeds, is not "acting in a fiduciary relation," within Bankruptcy Act, § 17 (4), being Comp. St. § 9601, providing that discharge does not release certain debts created by bankrupt while acting in a fiduciary relation.

**3. Bankruptcy ⬥424—Liability for a conversion is not released by discharge.**

Liability for conversion is within Bankruptcy Act, § 17 (2), being Comp. St. § 9601, preventing discharge from releasing liability for willful and malicious injury to property of another.

**4. Bankruptcy ⬥435 — Pleadings on claim arising before defendant's discharge in bankruptcy must show cause of action on liability not released by discharge.**

Under Bankruptcy Act, § 17 (2), being Comp. St. § 9601, preventing discharge of liabilities for willful and malicious injury to property of another, pleadings in action on claim arising before discharge should clearly show cause of action for willful and malicious injury.

**5. Bankruptcy ⬥424—Conversion must be willful and malicious, or liability therefor is released by discharge in bankruptcy.**

Under Bankruptcy Act, § 17 (2), being Comp. St. § 9601, relative to discharge of liabilities for willful and malicious injury of another's property, conversion must be willful and malicious to bar release of liability by bankrupt's discharge.

**6. Bankruptcy ⬥423(2)—Mere negligent conversion does not give rise to liability which is not discharged in bankruptcy.**

Mere negligent conversion of property, by misdelivery of bailed article or failure to keep separate the proceeds, does not create liability which is not discharged in bankruptcy, under Bankruptcy Act, § 17 (2), being Comp. St. § 9601.

**7. Bankruptcy ⬥424—Liability of agents for sale of fertilizer for proceeds lost or appropriated held not as for willful and deliberate conversion, such as was not discharged in bankruptcy.**

Agents for sale of fertilizer, who lost proceeds by bad collections, or appropriated those collected under mistaken belief as to effect of their contract with principal, *held* not liable for willful and deliberate conversion, which, under Bankruptcy Act, § 17 (2), being Comp. St. § 9601, would not be released by discharge in bankruptcy.

**8. Bankruptcy ⬥426(2)—Discharge will be decreed in cases of agents, brokers, etc., where there is neither technical trust in the contractual relation, nor moral turpitude in its breach.**

Discharge of liability will be decreed in all cases of agents, brokers, factors, auctioneers, conditional vendees, and the like, where there is neither a technical trust in the inception of the contractual relation, nor moral turpitude in breach of it.

In Equity. Suit by Swift & Co. against Bullard & Son. Bill dismissed.

Troutman & Troutman, of Atlanta, Ga., for plaintiff.

Claude C. Smith and Jesse M. Wood, both of Atlanta, Ga., for defendant.

SIBLEY, District Judge. This is a bill in equity, seeking, besides auxiliary equitable remedies, an accounting for the proceeds of sale of fertilizers shipped by plaintiff, a corporation, to defendants, a partnership, in 1920, under a signed agreement whereby defendants were to receive and sell the fertilizers as plaintiff's agents and for its account, on commission, and to guarantee the sales by giving their notes for the value of the fertilizer shipped, and praying for a judgment on the notes so given. The defendants, by answer, admit liability on the notes, but deny that they sold the fertilizers as plaintiff's agents, or are accountable for the proceeds as such, and by amendment plead their discharge in an involuntary bankruptcy brought pending this suit, in which plaintiff proved said notes. Upon a hearing for final decree, after evidence was submitted, the plaintiff, without further pleading, contends that its suit is not barred by the discharge, because saved by the provisions of section 17 of the Bankruptcy

Act (Comp. St. § 9601), excepting liabilities for willful and malicious injuries and debts made while acting in a fiduciary capacity.

[1] 1. The claim of the defendants that they were purchasers of the fertilizers, and not agents to sell, is unsustainable. It sufficiently appears that they, on account of the likelihood of trouble and confusion, refused to agree to the stipulation in the printed form of contract that they should take separate notes for plaintiff's fertilizers from their customers, that they desired to buy on their own credit, and that plaintiff's salesman wrote on the face of the agreement the words "No collateral," after which it was signed and sent for acceptance to plaintiff at Atlanta. The agreement so submitted and accepted concludes with the words: "Written and printed, this agreement shall be binding only when confirmed in writing by Swift & Co. at Atlanta, Georgia. * * * No agreement not expressed herein shall be binding on principal." The writing alone constituted the contract. The words "No collateral" may fairly negative the provision as to taking and returning to plaintiff the customers' notes, but will not convert the plain terms of the agency agreement into one of simple sale. The pleadings do not seek, and the evidence would not authorize, a reformation of it for fraud, accident, or mistake. The parties are bound by the writing, regardless of any difference in their understanding of its terms. It and the notes given in pursuance of it measure the legal relation and obligations of the parties to it, and require a holding that the title to the fertilizers delivered remained in plaintiff and that defendants are accountable as agents for its sale.

[2] 2. This relationship, however, does not make a case of one "acting in a fiduciary capacity," within the meaning of Bankruptcy Act, § 17 (4). These words were in the Bankruptcy Acts of 1841 (5 Stat. 440) and 1867 (14 Stat. 517), and were authoritatively held not to include ordinary agencies and bailments. Noble v. Hammond, 129 U. S. 65, 9 S. Ct. 235, 32 L. Ed. 621. They are to be similarly construed in the present act. Collier on Bankruptcy (13th Ed.) p. 636, and cases cited.

[3] 3. A more plausible contention is that this is a "liability for a willful and malicious injury to the property of another," within section 17 (2), because the defendants, having no title to the fertilizers or the proceeds, must have converted the one or the other, and liability for a conversion is

within the subsection, citing McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. Ed. 205, and Covington v. Rosenbusch, 148 Ga. 459, 97 S. E. 78. But in the first place the liability asserted in the bill is not one in tort for conversion, as was true in each of the cases cited, but is one in contract on notes and for breach of the stipulations in the exhibited agreement. Conversion is not mentioned, save in connection with a prayer for injunction against a future conversion of proceeds. It is not alleged that any fertilizer was misappropriated, or what, if any, proceeds of sale were collected and converted, but a general recovery for the face of the notes is sought. Much less does it bring into issue any element of willfulness or maliciousness.

[4] Subsection 2, in its original form, applied only in cases of "judgments for willful and malicious injuries." If judgment was not pronounced upon such a cause of action, the exception could not apply. By the amendment of 1903 the word "judgments" was substituted by "liabilities," so that a final judgment need not be had before the discharge; but it is still necessary that a similar cause of action be indicated by the original or amended pleadings before a court of record should adjudicate that a discharge is not a bar because of this exception.

The litigants have made no question on the pleadings. But the proven facts lead to the same result. The admitted sale of the fertilizers was not a conversion of them. They were delivered in order to be sold. The failure to take separate notes for them from customers was excused by a fair construction in the light of the circumstance of the indorsed words "No collateral." But the general obligation to keep separate and account for the proceeds of plaintiff's goods is not so relieved. It supports this bill for an accounting. Defendants have guaranteed and are liable for all sales made, but no conversion of proceeds is shown until it appears that some have been collected and not paid over.

[5, 6] As to this there is neither charge nor proof. There is only general evidence of the notorious fact that, owing to the deflation in the fall of 1920, very little was ever collected on fertilizer debts of that year. Yet further, not every conversion is within the statute, but only such as are willful and malicious. One arising by negligence, such as misdelivery of a bailed article, or negligent failure to keep separate the proceeds of sale, is not included. See

Tinker v. Colwell, 193 U. S. at page 489, 24 S. Ct. 505, 48 L. Ed. 754. In McIntyre v. Kavanaugh, supra, it appeared that $25,000 worth of stocks were pledged to secure a debt of less than $4,000, and the very next day, without default or authority from the debtor, the pledgee began to sell and use the proceeds of the stock, and soon sold all and went into voluntary bankruptcy. It was there said: "To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury to it within the common acceptance of the words. * * * The circumstances disclosed suffice to show a malicious and willful injury to property."

[7, 8] The circumstances here tend rather to show a loss of the proceeds by bad collections and an appropriation of any that were collected because of a mistaken belief as to the effect of the "no collateral" indorsement, which is far from willful and deliberate conversion. Walker Bros. v. Capital City Grocery Co., 28 Ga. App. 531, 112 S. E. 157; White v. Morris Fertilizer Co., 31 Ga. App. 710, 121 S. E. 704. "Dischargability will be decreed in all cases such as those of agents, brokers, factors, auctioneers, conditional vendees, and the like, where there is neither a technical trust in the inception of the contractual relation, nor moral turpitude in the breach of it." Collier on Bankruptcy (13th Ed.) p. 609.

A decree will be entered, upholding the discharge and dismissing the bill.